NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

KA 17-410

STATE OF LOUISIANA

VERSUS

RENEE TYLER

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 13646-10
HONORABLE ROBERT LANE WYATT, DISTRICT JUDGE

**********

CANDYCE G. PERRET
JUDGE

**********

Court composed of Elizabeth A. Pickett, John E. Conery, and Candyce G. Perret, Judges.

AFFIRMED AND
REMANDED WITH INSTRUCTIONS.

**John Foster DeRosier**
**14th JDC, District Attorney**
**Karen C. McLellan**
**14th JDC, Assistant District Attorney**
**P. O. Box 3206**
**Lake Charles, LA 70602-3206**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Edward Kelly Bauman**
**Louisiana Appellate Project**
**P. O. Box 1641**
**Lake Charles, LA 70602-1641**
**(337) 491-0570**
**COUNSEL FOR DEFENDANT-APPELLANT:**
    **Renee Tyler**

**PERRET, Judge.**

Defendant-Appellant, Renee Tyler, was convicted of second degree murder, in violation of La.R.S. 14:30.1. Defendant was sentenced to life in prison at hard labor, without the benefit of probation, parole, or suspension of sentence. Defendant seeks review of her conviction by this court based on whether or not she was sane at the time of the offense. For the reasons that follow, we affirm Defendant's conviction.

## ISSUE FOR REVIEW

This court must decide whether the trial court erred in finding Defendant sane at the time of the offense.

## FACTS AND PROCEDURAL HISTORY

On February 20, 2010, Defendant called the Lake Charles Police Department and reported that she shot someone. The reporting officers later found Elliot Thomas shot at the scene, lying on the bedroom floor. Defendant admitted to the officers on the scene that she shot Mr. Thomas. Defendant further admitted to hiding the gun in an undisclosed location where it would never be found. Defendant refused to disclose the location of the gun. Thomas was transported to a local hospital but later died from a gunshot wound.

Defendant was charged by Bill of Indictment with one count of second degree murder, in violation of La.R.S. 14:30.1, and one count of obstruction of justice, in violation of La.R.S. 14:130.1(A)(1). A motion to appoint a sanity commission was filed, but withdrawn before Defendant's competency was determined. Following a jury trial, Defendant was found guilty as charged and received a mandatory life sentence without benefits for the murder conviction and two years at hard labor to run concurrently with the life sentence for the

obstruction of justice conviction. However, this court found that it was improper for the trial court to allow a motion for sanity commission to be withdrawn without determining Defendant's competency, vacated her convictions, and remanded to the trial court for a sanity commission prior to trial. See *State v. Tyler*, 11-1123 (La.App 3 Cir. 5/9/12), 89 So.3d 510, *writ denied*, 12-1314 (La. 11/30/12), 103 So.3d 364.

Doctors Garret Ryder and James Anderson were appointed by the court to determine Defendant's capacity to stand trial. Doctor Patrick Hayes was also later appointed. Following testimony from Drs. Ryder, Anderson, and Hayes, the trial court found that Defendant was competent to stand trial and set a trial date of May 2, 2016. Dr. Hayes was also asked to review Defendant's sanity at the time of the offense, and he concluded that she was sane.

After finding Defendant competent to stand trial, the trial court also noted that, "I'm convinced of the determination of sanity at the time of the offense." At that time, Defendant pled not guilty and not guilty by reason of insanity. Defendant also waived her right to a jury trial in court.

The State then dismissed the obstruction of justice charge and a bench trial was held on the second degree murder charge. At trial, the State admitted recordings during which Defendant stated she shot the gun once, but it didn't go off. Defendant then shot the gun a second time, hitting the victim. Defendant continued to say the victim messed up her life and so she messed up his and that now they were even. The State also presented several witnesses who testified that Defendant was upset with the victim over money, specifically an income tax check. Defendant told her co-worker, who was also the victim's sister-in-law, that

2

she wanted to kill the victim. Defendant even told her co-worker to warn the victim's family.

Defendant's sister also testified that Defendant came over to her house at 1:00 a.m. on February 20, 2010, asking for a gun. Additionally, the detective at the scene, Mr. Rupp,[1] testified that Defendant said, immediately upon him opening the patrol car door, "Look, I did it. I shot Elliott. You're not gonna find the gun, and I'll cooperate any way I can." Defendant later agreed to a search and seizure of her apartment. Mr. Rupp recalls Defendant explained there were no arguments, no fights, she planned it and she did it.

Defendant's opening statement included no reference to her claim that she was insane at the time of the murder. Defendant did not call any witnesses or put on any case-in-chief regarding her insanity claim. The short cross-examination that took place of a handful of the State's witnesses had nothing to do with Defendant's sanity at the time of the offense.

The trial judge found Defendant guilty as charged.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find that there is one error patent and one harmless error patent.

First, the Defendant was entitled to a jury trial in this case. *See* La.R.S. 14:30.1 and La.Code Crim.P. art. 782. Louisiana Code of Criminal Procedure Article 780 states:

---

[1] The spelling of Mr. Rupp's name differs throughout the record, on August 25, 2010 being spelled "Rupf," but during trial as "Rupp." We refer to him as Rupp.

3

A. A defendant charged with an offense other than one punishable by death may knowingly and intelligently waive a trial by jury and elect to be tried by the judge.

B. The defendant shall exercise his right to waive trial by jury in accordance with Article I, Section 17 of the Constitution of Louisiana. The waiver shall be by written motion filed in the district court not later than forty-five days prior to the date the case is set for trial. The motion shall be signed by the defendant and shall also be signed by defendant's counsel unless the defendant has waived his right to counsel.

C. With the consent of the district attorney the defendant may waive trial by jury within forty-five days prior to the commencement of trial.

D. A waiver of trial by jury is irrevocable and cannot be withdrawn by the defendant.

There is no written waiver of jury trial as required in the record. However, the court minutes reflect that Defendant was present when defense counsel advised the court of the waiver. The court advised Defendant of her right to a trial by jury, Defendant indicated she understood, that she had discussed the matter with her attorney, and that she wanted to waive her right to a jury trial.

In *State v. Bell*, 13-1443 (La.App. 3 Cir. 6/4/14), 140 So.3d 830, this court held this same scenario was harmless error. Accordingly, this court holds the error in failing to obtain a written waiver in violation of La.Code Crim.P. art. 780 in this case was harmless under the facts of the present case.

Second, Defendant was advised at sentencing that she has "two years from today's date and the date of the final - - this conviction becoming final to file for post-conviction relief." The prescriptive period for filing post-conviction relief is two years, beginning when a conviction and sentence become final under the provisions of La.Code Crim.P. arts. 914 or 922. La.Code Crim. Art. 930.8.

4

In *State v. M.S.L.*, 10-738 (La.App. 3 Cir. 2/2/11) (unpublished opinion), *writ denied*, 11-453 (La. 9/23/11), 69 So.3d 1155, this court noted it was not clear whether the trial court advised the defendant that he had two years from sentencing to seek post-conviction relief, or whether it corrected itself to indicate the two years begins with the finality of the conviction. In *M.S.L.*, the trial court stated the defendant had "two (2) years from this date, the date your conviction becomes final, to file any Post Conviction Relief Petition." This court therefore ordered the trial court to correctly advise the defendant of La.Code Crim.P. art. 930.8 by sending written notice and to file written proof in the record that the defendant received notice.

We find that the trial court failed to correctly advise Defendant of her time to seek post-conviction relief. Consequently, to ensure Defendant in this case is properly informed of the provisions of La.Code Crim.P. art. 930.8, we remand to the trial court with instructions that the trial court send written notice, properly advising Defendant of her time to seek post-conviction relief within thirty days of the rendition of this opinion, and to file written proof in the record that defendant received the notice. *M.S.L.*, 10-783; *State v. Baylor*, 08-141 (La.App. 3 Cir. 11/26/08), 998 So.2d 800, *writ denied*, 09-275 (La. 11/20/09), 25 So.3d 795.

## STANDARD OF REVIEW

The Louisiana Supreme Court in *State v. Williams*, 07-1407, p. 8 (La. 10/20/99), 22 So.3d 867, 876, *cert. denied*, 560 U.S. 905, 130 S.Ct. 3278 (2010), recited the standard of review applicable in this case as the following:

> In reviewing a claim for insufficiency of evidence in an action where the affirmative defense of insanity is raised, the appellate court, applying the standard set forth in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), must determine whether under the

5

facts and circumstances of the case, any rational fact finder, viewing the evidence most favorably to the prosecution, could conclude, beyond a reasonable doubt, that the defendant failed to prove by a preponderance of the evidence that he was insane at the time of the offense. *State v. Peters,* 94–0283, p. 8, 643 So.2d at 1225; *State v. Armstrong,* p. 4, 671 So.2d at 309; *State v. Nealy,* 450 So.2d 634, 639 (La.1984).

## LAW AND DISCUSSION

In Louisiana, a legal presumption exists that a "defendant is sane and responsible for his actions." La.R.S. 15:432. The burden of proving otherwise is on the defendant. La.Code Crim.P. art. 652. The defendant must rebut the presumption of sanity "at the time of the offense by a preponderance of the evidence." *Id.*; see also *State v. Roy*, 395 So.2d 664 (La.1981). It is then the responsibility of the fact-finder to determine whether the defendant met that burden. *Williams*, 22 So.3d 867. Specifically, the Louisiana Supreme Court stated:

> [T]o overcome this presumption of sanity, the defendant has the burden of proving by a preponderance of the evidence that he suffered a mental disease or a mental defect which prevented him from distinguishing between right and wrong with reference to the conduct in question. Sanity is a factual matter for the jury, to be determined from all of the evidence, both lay and expert, along with circumstances surrounding the events and testimony relating to the defendant's behavior before, during, and after the crime. A determination of the weight of the evidence is a question of fact that rests solely with the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness, and if rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all of the evidence most favorable to the prosecution must be adopted.

*Id*. at 875-76 (citations omitted).

In *Roy*, the Louisiana Supreme Court reversed a finding of sanity based on insufficient evidence. The court reviewed the denial of a motion for new trial. The

court held the jury's verdict of sanity was contrary to the preponderance of evidence. Specifically, the court recognized that the defense presented three doctors at trial who testified the defendant suffered from chronic paranoid schizophrenia on the day of the crime. One doctor stated the defendant could not tell right from wrong; though he knew he was shooting someone, he saw them as an enemy to be destroyed like a soldier overseas. A second doctor diagnosed the defendant with the same condition, but opined it was of at least ten years duration, and that the defendant was under the influence of "dangerous delusions." *Roy*, 395 So.2d at 668. The third doctor opined the defendant knew the nature and consequences of his actions, but could not distinguish right from wrong. The State did not present any testimony to contradict the doctors. Instead, the State relied on the fact that the defendant admitted to the crime and submitted to the police. Therefore, the supreme court held the defendant established insanity by a preponderance of the evidence, the motion for new trial should have been granted, and the defendant's conviction and sentence were reversed, with the case remanded to the trial court for further proceedings consistent with the opinion.

On the other hand, this court in *State v. Collatt*, 477 So.2d 177 (La.App. 3 Cir. 1985), determined that sufficient evidence supported the jury's finding of guilt, and denied the defendant's insanity assertion. Although the defendant was a mental patient since 1970, the murder occurring in 1984, a psychiatrist and member of the defendant's Sanity Commission testified the defendant was able to distinguish right from wrong. His opinion was based on the defendant's remorsefulness, the act of disposing of the weapon, and going to a church and minister's home after the crime.

In the present case, Defendant asserts on appeal that only Dr. Hayes gave an opinion as to whether or not Defendant was competent at the time of the offense. Defendant therefore seeks to have her conviction and sentence vacated, and her case remanded for a new determination of her sanity at the time of the offense.

Three doctors interviewed Defendant to determine her competency to stand trial. Dr. Hayes was the only doctor asked to additionally provide an opinion on Defendant's sanity at the time of the offense. Dr. Hayes opined she was sane at the time of the offense. This evidence was admitted at the sanity hearing and Defendant failed to present evidence that contradicted Dr. Hayes's findings. The trial court declared Defendant was sane at the time of the offense. Thereafter, no evidence of Defendant's insanity was admitted at trial.

At trial, the State presented evidence that Defendant thought about killing the victim prior to doing it, admitted to shooting the victim, and evidence that she was unremorseful, stating in a later phone call that now she and the victim were even. Defendant also hid the weapon, telling Mr. Rupp, "You're not gonna find the gun[.]" The record shows Defendant did not present any evidence at trial of her insanity at the time of the offense. Although she was previously evaluated to determine her competency to stand trial, her sanity was not further presented for the fact-finder during her actual trial. At no time at trial did Defendant even raise the assertion she was insane at the time of the offense; not in opening statements or through any evidence or testimony presented. The last time Defendant alleged she was insane was at the sanity hearing when she pled "not guilty and not guilty by reason of insanity." Defendant did not make any case for insanity at the time of the offense, let alone overcome the presumption of sanity. Based on the evidence introduced, a rational fact finder could conclude, beyond a reasonable doubt, that

8

Defendant failed to prove by a preponderance of the evidence that she was insane at the time of the offense.

## CONCLUSION

For the foregoing reasons, we find Defendant failed to overcome the presumption that she was sane during the commission of the offense. Therefore, we affirm Defendant's conviction and sentence. We further remand this case to the trial court with instructions to send written notice within thirty days of the rendition of this opinion, properly advising Defendant of her time to seek post-conviction relief, and to file written proof in the record that Defendant received the notice.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS.** THIS OPINION IS NOT DESIGNATED FOR PUBLICATION. RULE 2-16.3, UNIFORM RULES—COURTS OF APPEAL.